UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SHABBIR NOMANBHOY and MUNIRA NOMANBHOY, | ) )  )  12 C 5969 |
| Plaintiffs, | ) )  Judge Feinerman |
| vs. | ) ) |
| ABITURAB BOXWALLA, AYMEN TYEBJEE, YUNUS NOMANBHOY, and NAFEESA MOOSABHOY, | ) ) ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

Shabbir and Munira Nomanbhoy ("Shabbir" and "Munira") brought this state law suit against Abiturab Boxwalla, Aymen Tyebjee, Yunus Nomanbhoy ("Yunus"), and Nafeesa Moosabhoy. The two-count complaint alleges that Yunus, Tyebjee, and Boxwalla breached fiduciary duties that they owed to Plaintiffs and that Yunus, Tyebjee, and Moosabhoy breached a contract they had made with Plaintiffs. Doc. 1. Defendants have moved to dismiss on two grounds, under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim and under Rule 12(b)(7) for failure to join a party under Rule 19; alternatively, Defendants move to stay the case pending arbitration pursuant to § 3 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 3. Doc. 15. Defendants' Rule 12(b)(7) motion is denied, and their motion for a stay pending arbitration is granted. Given the stay, the merits of the Rule 12(b)(6) motion are not reached.

**Background**

In considering Defendants' motions to dismiss, the court will assume the truth of the complaint's factual allegations, though not its legal conclusions. *See Munson v. Gaetz*, 673 F.3d

630, 632 (7th Cir. 2012) (Rule 12(b)(6)); *Davis Cos. v. Emerald Casino, Inc.*, 268 F.3d 477, 479 n.2 (7th Cir. 2001) (Rule 12(b)(7)). The court must consider "the complaint itself, documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice," as well as additional facts set forth by Plaintiffs, the non-movants. *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012).

The parties were shareholders, directors, and officers of an Illinois corporation called Dyna Care Health Ventures, Inc., which operated home health agencies in Illinois and elsewhere. Doc. 1 at ¶ 10. Dyna Care's assets were sold to another firm in May 2007, *ibid.*, and the company was dissolved by a majority vote of the board of directors in May 2012, Doc. 20 at 9. While the parties were running Dyna Care, they played the following roles. Shabbir and Munira were shareholders, and Shabbir was a member of the board of directors. Doc. 1 at ¶ 11. Yunus was a member of the board, and he was also the proxy and agent of his daughter, non-party Zehra Vahanvaty (about whom more later), who was a shareholder. *Id*. at ¶ 14. Boxwalla was the company's president, a member of the board of directors, and a shareholder. *Id*. at ¶ 12. Tyebjee was vice president and secretary, a member of the board, and a shareholder. *Id*. at ¶ 13. Moosabhoy was chairman of the board. *Id*. at ¶ 15.

In May 2006, Shabbir, Yunus, Tyebjee, and Moosabhoy signed a contract called the "Settlement Agreement," which dealt with the sale of the firm's assets. Doc. 1-1. Unlike the other three signatories to the Agreement, Yunus signed not on his own behalf but as an agent of his daughter, Vahanvaty; though Yunus was a member of the company's board, the record does not suggest that he personally was a shareholder. Doc. 1 at ¶¶ 16-17; Doc. 1-1 at 3. The Settlement Agreement provided that Dyna Care would be sold and governed how it would be

operated pending sale and how its funds and the proceeds from the sale would be divided among the major shareholders. Doc. 1-1 at 1-3. The Agreement contained an arbitration clause: "If there is any disagreement about this 'Settlement Agreement' issues will be resolved by arbitration of Shehzada Mufaddal BS Saifuddin Saheb." *Id*. at 3.

Disagreements did arise, and the parties submitted them to arbitration by Shehzada Mufaddal. In February 2008, he issued an Arbitration Award "in full and final settlement of all disputes between the Parties"; the parties to the Award were Shabbir, Vahanvaty (through her agent, Yunus), Tyebjee, and Moosabhoy. Doc. 15-3 at 2-6. In 2011, Shabbir filed a petition to confirm the Arbitration Award pursuant to the United Nations Convention for the Recognition and Enforcement of Foreign Arbitral Awards and its enabling statute, 9 U.S.C. §§ 201-208. *Nomanbhoy v. Vahanvaty*, No. 11 C 2456 (filed N.D. Ill. Apr. 12, 2011). The petition named Yunus, Vahanvaty, Tyebjee, and Moosabhoy as respondents. *Id*., Doc. 1 at 1.

The Convention's enabling statute provides for federal court jurisdiction only over "[a]n action or proceeding falling under the Convention," 9 U.S.C. § 203, and it states that agreements and awards do not "fall under the Convention" when they are entirely between United States citizens and have no "other reasonable relation with one or more foreign states," 9 U.S.C. § 202. The court determined that the parties to the Settlement Agreement and the Arbitration Award were all United States citizens and that the Agreement and Award, which concerned the sale of a company located in the United States, did not bear a "reasonable relation" with any foreign states; having so found, the court dismissed the petition for lack of subject matter jurisdiction. *Nomanbhoy v. Vahanvaty*, 2011 WL 6736052 (N.D. Ill. Dec. 21, 2011) (Lefkow, J.). Contrary to Shabbir's incorrect representation to one of Shehzada Mufaddal's assistants that the court

"deemed to be invalid" the Arbitration Award and held that the award is "not valid in USA," Doc. 20-1 at 4, the court simply ruled that it did not have jurisdiction under the Convention and its enabling statute to enforce the award. Because the court did not have jurisdiction, it did not say anything, one way or the other, about the award's validity.

## Discussion

Plaintiffs filed the present lawsuit in July 2012. Count I of the complaint alleges that Yunus, Boxwalla, and Tyebjee, as directors and (in the case of Boxwalla and Tyebjee) officers of Dyna Care, owed Plaintiffs fiduciary duties as Dyna Care shareholders, and that those three defendants breached their duties by: (1) substantially increasing Boxwalla's and Tyebjee's salaries without authorization in 2007, thereby decreasing the profits left over to be distributed to Plaintiffs as shareholders; (2) paying Plaintiffs $650,000 less than their allotted shares called for in a distribution made in 2010; and (3) using company funds to pay for personal items and thereby reducing the funds left over for shareholders, including Plaintiffs. Doc. 1 at 4-5. Count II alleges that Yunus, Moosabhoy, and Tyebjee breached the Settlement Agreement by: (1) failing to pay Plaintiffs $1 million in shareholder distributions that they were owed under the Agreement; and (2) increasing Boxwalla's and Tyebjee's salaries in 2007 without authorization, contrary to a provision of the Agreement requiring unanimous approval by the major shareholders of any increase in those salaries. *Id*. at 5-6; *see also* Doc. 1-1 at 1-2. Because the parties do not discuss choice of law and the Settlement Agreement, which was signed in London, Doc. 1-1 at 3, contains no choice of law provision, the court shall analyze the state law claims under the law of the forum state, Illinois. *See Gould v. Artisoft, Inc.*, 1 F.3d 544, 549 n.7 (7th Cir. 1993) ("Where the parties have not identified a conflict between the two bodies of state law

that might apply to their dispute, we will apply the law of the forum state—here, Illinois."); *see also Kochert v. Adagen Med. Int'l, Inc.*, 491 F.3d 674, 677 (7th Cir. 2007) (same).

In addressing Defendants' motion to dismiss the complaint or to stay the case pending arbitration, the court must begin with the Rule 12(b)(7) motion to dismiss for failure to join a party under Rule 19, for that motion aims at the court's subject matter jurisdiction. *See Grinnell Mut. Reinsurance Co. v. Haight*, 697 F.3d 582, 584 (7th Cir. 2012) ("Our first task, as it is in every case, is to determine whether we have subject matter jurisdiction."); *Kawasaki Heavy Indus., Ltd. v. Bombardier Recreational Prods., Inc.*, 660 F.3d 988, 997 (7th Cir. 2011) (stating that a court must have subject matter jurisdiction to stay a case pending arbitration under § 3 of the FAA); *Countrywide Home Loans, Inc. v. Mortgage Guar. Ins. Corp.*, 642 F.3d 849, 854 (9th Cir. 2011) ("In order for a court to adjudicate an FAA claim, then, it must have proper jurisdiction over the conflict even assuming the parties had never entered into an agreement to arbitrate."). The court's jurisdiction is premised on the diversity jurisdiction statute, 28 U.S.C. § 1332. Section 1332(a) provides for federal court jurisdiction over civil actions where the amount in controversy exceeds $75,000 and the parties are citizens of different States, *ibid.*, which requires "complete diversity," meaning that no plaintiff can be a citizen of the same State as any defendant. *See Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005). As filed, the complaint meets these requirements, for Plaintiffs are citizens of California, Defendants are citizens of Illinois or Texas, and the amount in controversy easily exceeds $75,000. Doc. 1 at ¶¶ 1-7; *id*. at p. 5 (claiming damages in excess of $1.3 million). But Defendants argue that Yunus's daughter, Vahanvaty, is a necessary and indispensable party who must be joined as a

defendant under Rule 19, Doc. 15 at 5-6, and the parties agree that joinder of Vahanvaty would eliminate complete diversity because she, like Plaintiffs, is a citizen of California, Doc. 20 at 2.

Defendants argue that Vahanvaty is a necessary and indispensable defendant with respect to the contract claim because, although that claim names Yunus as a defendant, Yunus is not himself a party to the Settlement Agreement but signed it only as Vahanvaty's agent. *See* Doc. 1-1 at 3 (the Settlement Agreement, with signature of Yunus Nomanbhoy "for Zehra Vahanvaty"). A fundamental rule of agency law, applicable in Illinois as elsewhere, provides that "[u]nless otherwise agreed, a person making or purporting to make a contract with another as agent for a disclosed principal does not become a party to the contract." Restatement (Second) of Agency § 320 (1958); *see also* Restatement (Third) of Agency § 6.01 (2006) (same); *Gateway Erectors Div. of Imoco-Gateway Corp. v. Lutheran Gen. Hosp.*, 430 N.E.2d 20, 22 (Ill. App. 1981) (same, citing § 320 of the Restatement). Because Yunus's role as Vahanvaty's agent was disclosed—he signed her name on the Agreement next to his own—Yunus was not personally bound by the Agreement and so cannot be liable for breaching it. In their response to Defendants' motion, Plaintiffs acknowledge all this and seek to dismiss Yunus as a defendant from their contract claim, though not from their fiduciary duty claim, which alleges that Yunus violated a duty that he personally owed Plaintiffs as a member of Dyna Care's board of directors. Doc. 20 at 2. The court construes this as a partial voluntary dismissal by Plaintiffs under Federal Rule of Civil Procedure 41(a)(1)(A)(i), and, so construed, the dismissal is proper because Defendants have neither answered the complaint nor filed a motion for summary judgment.

But the dismissal of Yunus from Plaintiffs' contract claim does not address Defendants' Rule 12(b)(7) argument, which is that Vahanvaty is a necessary and indispensable defendant for

the claim and that the case must therefore be dismissed under Rule 19(b) because Vahanvaty's joinder would destroy complete diversity. At oral argument on January 22, 2013, the court asked Plaintiffs whether they were alleging (1) that Yunus had breached the contract in his own capacity as a Dyna Care director, in which case Yunus could not be liable because he was not bound by the contract and Vahanvaty could not be liable because Yunus had taken the allegedly breaching actions in his own capacity rather than while acting as her agent; or (2) that Yunus had breached the contract in his capacity as Vahanvaty's agent, in which case Yunus still could not be liable for breach, but Vahanvaty could be liable for her agent's actions. Plaintiffs responded that Yunus was acting as Vahanvaty's agent, meaning that Vahanvaty *could* be sued for breaching the Agreement, but he went on to explain that Plaintiffs had chosen to pursue their contract claim against only Moosabhoy and Tyebjee. The dispositive question is whether Rule 19 permits Plaintiffs to choose to sue only some of the contract counterparties who may have participated in an alleged breach of the contract or, by contrast, whether the Rule requires that a suit be dismissed when one such party cannot be joined without destroying the court's jurisdiction.

In arguing that Vahanvaty is a necessary and indispensable defendant, Defendants submit that all parties to a contract are always indispensable parties to suits for breach of that contract. Doc. 22 at 2-3. The Seventh Circuit has stated that "it is true that 'a contracting party is the paradigm of an indispensable party.'" *Davis Cos.*, 268 F.3d at 484 (quoting *United States ex rel. Hall v. Tribal Dev. Corp.*, 100 F.3d 476, 479 (7th Cir. 1996)). The court does not interpret that statement, which was dictum, to suggest that *all* contractual parties are *invariably* necessary and indispensable to a contract claim. Neither the parties nor the court have discovered any case

from the Seventh Circuit, the Supreme Court, or any other court of appeals actually saying that. In *Davis Companies*, the Seventh Circuit did not need to determine whether contracting parties are always indispensable, for it held that the person at issue was not a party to the underlying contract at all and therefore was not plausibly indispensable.

In *Hall*, the opinion quoted by *Davis Companies*, the phrase "a contracting party is the paradigm of an indispensable party" appeared in a parenthetical quotation from a district court opinion. *See Hall*, 100 F.3d at 479 (quoting *Travelers Indem. Co. v. Household Int'l, Inc.*, 775 F. Supp. 518, 529 (D. Conn. 1991)). *Hall* actually stated a much narrower rule: "'[n]o procedural principle is more deeply imbedded in the common law than that, *in an action to set aside a lease or a contract*, all parties who may be affected by the determination of the action are indispensable.'" *Ibid*. (emphasis added) (quoting *Lomayaktewa v. Hathaway*, 520 F.2d 1324, 1325 (9th Cir. 1975)). And *Hall* went on to say that "[p]erhaps this rather sweeping declaration has its limits, but its core principle fully applies here." *Ibid*. Limited or not, the rule stated in *Hall* has no application to this case, which does not ask the court to set aside a contract. This distinction between this case and *Hall* makes sense. A party to a contract plainly has a greater interest in participating in a suit to set aside the contract, which might affect or eliminate the other contracting parties' obligations to her, than in a suit for breach of contract in which a second party to the contract merely alleges that a third party has breached the second party's contractual rights; in the latter scenario, the effect on the first party of a finding of breach or no breach would be attenuated at best.

The prevailing view among the courts of appeals is as follows: (1) contracting parties generally are indispensable to a suit to invalidate the contract; (2) co-obligees under a contract,

meaning contracting parties other than the plaintiff whose rights under the contract may have been violated, who therefore are potential co-plaintiffs, are generally indispensable in suits for breach of contract; but (3) co-obligors under a contract, who are potential co-defendants, "generally are not indispensable parties in contract disputes that do not involve reformation, cancellation, rescission, or otherwise challenge the validity of the contract." *In re Olympic Mills Corp.*, 477 F.3d 1, 10 (1st Cir. 2007) (collecting cases); *see also Universal Reinsurance Co. v. St. Paul Fire & Marine Ins. Co.*, 312 F.3d 82, 87 (2d Cir. 2002) ("We have held that Rule 19 does not mandate the joinder of joint obligors, because one of several joint obligors is not typically an indispensable party to an action against the others."); *Janney Montgomery Scott, Inc. v. Shepard Niles, Inc.*, 11 F.3d 399, 404-13 (3d Cir. 1993) ("[i]f the Agreement in question can be construed or interpreted as a contract imposing joint and several liability on its co-obligors, … complete relief may be granted in a suit against only one of them," and so the other is not a necessary party); *Brackin Tie, Lumber & Chip Co. v. McLarty Farms, Inc.*, 704 F.2d 585, 587 (11th Cir. 1983) ("A review of the case law in this area reveals that the majority of courts hold that while joint obligees are indispensable parties, joint obligors are not."); *Trans Pacific Corp. v. S. Seas Enters., Ltd.*, 291 F.2d 435, 436 (9th Cir. 1961) ("Nor, ipso facto, are joint obligors indispensable parties, despite a previous statement by this court to that effect under different circumstances. This is not a suit for rescission, but for damages for breach of contract.") (citations omitted); *William A. Gross Constr. Assocs., Inc. v. Am. Mfrs. Mut. Ins. Co.*, 2009 WL 427280, at *10 (S.D.N.Y. Feb. 23, 2009) ("It is well-settled that *co-obligors* to an agreement … are generally not 'indispensable' parties to a litigation under Rule 19(b).") (collecting cases); *cf. Bio-Analytical Servs., Inc. v. Edgewater Hosp., Inc.*, 565 F.2d 450, 452-53 (7th Cir. 1977). As a

leading treatise put it: "Today the joinder of obligors is left to plaintiff's discretion by many courts and he may select defendants without being concerned about dismissal because of nonjoinder." 7 Charles A. Wright *et al.*, Federal Practice and Procedure § 1613 (3d ed. 2012). That is the opposite of the rule urged by Defendants.

The view that one co-obligor to a contract is not a necessary and indispensable defendant in a contract suit against the other co-obligors is buttressed by the analogous rule in the tort context. In that context, "[i]t has long been the rule that it is not necessary for all joint tortfeasors to be named as defendants in a single lawsuit." *Temple v. Synthes Corp.*, 498 U.S. 5, 7 (1990). Rather, the tort plaintiff may choose which tortfeasors to sue and may collect a full judgment from any subset of the multiple tortfeasors. *See* Fed. R. Civ. P. 19(a), 1966 Advisory Committee Notes ("a tortfeasor with the usual 'joint-and-several' liability is merely a permissive party [rather than a necessary one] to an action against another with like liability"); *Pasco Int'l (London) Ltd. v. Stenograph Corp.*, 637 F.2d 496, 505 (7th Cir. 1980) (same). Nothing about contract law calls for a different result. "Under Illinois law, generally, all joint obligations and covenants shall be taken and held to be joint and several obligations and covenants. If two or more parties to a contract owe a joint and several duty of performance to another party to the contract and the duty is not performed, each may be liable for the entire damages resulting from the failure to perform." *Pritchett v. Asbestos Claims Mgmt. Corp.*, 773 N.E.2d 1277, 1283 (Ill. App. 2002) (citations and internal quotation marks omitted); *see also* Restatement (Second) of Contracts § 290 (1981). Applied to this case, that principle means that even if Vahanvaty (acting through her agent, Yunus) breached the contract along with Moosabhoy and Tyebjee, Plaintiffs

are entitled to sue only Moosabhoy and Tyebjee, and if they prevail to collect their entire damages from those two defendants.

Although the Seventh Circuit has not spoken directly to whether co-obligors are necessary and indispensable parties under Rule 19, this court will follow the prevailing view set forth above. That is the proper course, both because the prevailing view is persuasive and because the courts of appeals that have addressed the issue appear to be unanimous, and this court is reluctant to assume that the Seventh Circuit would create a circuit split or that it intended to do so in *Davis Companies*. *See Turley v. Gaetz*, 625 F.3d 1005, 1012 (7th Cir. 2010) ("Notably, we do not believe that the *George* and *Boriboune* panels intended their remarks about § 1915(g) to serve as pronouncements on the general application of the three-strikes rule to all prisoner cases because neither opinion was circulated under Circuit Rule 40(e) despite the contrary precedent then existing in our sister circuits. We presume, therefore, that the creation of a circuit split was not intended."); *Andrews v. Chevy Chase Bank*, 545 F.3d 570, 576 (7th Cir. 2008) ("Finally, we note that creating a circuit split generally requires quite solid justification; we do not lightly conclude that our sister circuits are wrong.").

So, the general rule is that co-obligors are not necessary and indispensable parties to a contract claim, and Defendants point to nothing about this case that would warrant making this case an exception. It follows that the Rule 12(b)(7) motion to dismiss for failure to join a party under Rule 19 must be denied. The court has jurisdiction over this suit, and can now turn to Defendants' motion to stay the case pending arbitration pursuant to § 3 of the FAA.

In their opposition brief, Plaintiffs argued that at least some of their claims do not fall within the Settlement Agreement's arbitration clause, and also that arbitration is now impossible

because Shehzada Mufaddal is unwilling to serve as arbitrator and the arbitration clause refers to him by name and does not provide for a substitute. Doc. 20 at 4-7; Doc. 1 at ¶ 18 ("The clause in the Settlement Agreement requiring that any disputes arising out of the Settlement Agreement be resolved through arbitration by Shehzada Mufaddal BS Saifuddin Saheb …, a religious leader, is impossible to be followed as Shehzada Mufaddal is no longer willing to serve as an arbitrator for the Settlement Agreement."). But at the oral argument on January 23, 2012, Plaintiffs were open to the court's staying the case and requesting that Shehzada Mufaddal again serve as arbitrator. That is the proper course.

With respect to whether the claims fall within the Settlement Agreement's arbitration clause, the clause is broad, providing that "[i]f there is any disagreement about this 'Settlement Agreement' issues will be resolved by the arbitration of Shehzada Mufaddal." Plaintiffs' contract claim is covered by the clause, since the contract alleged to have been breached is the Settlement Agreement. The fiduciary duty claim alleges that Defendants paid Plaintiffs smaller distributions than they were owed by virtue of their Dyna Care stock, that Defendants raised Boxwalla's and Tyebjee's salaries without authorization, and that Defendants used company funds for personal expense. Doc. 1 at 4-5. The Settlement Agreement contains provisions pertinent to all of those allegations: it provides for Shabbir's stock to be increased and for "[d]istribution of all cash profits to be made quarterly," Doc. 1-1 at 1-2; it prohibits an increase to Boxwalla's and Tyebjee's salaries absent approval of the major stockholders, including Shabbir, *id*. at 2; and it provides that "[a]ll small and large personal expenses for which Abi [Boxwalla] and/or Aymen [Tyebjee] and/or Shabbir have used company funds will be taken in Hisab," *ibid*. "Once it is clear … that the parties have a contract that provides for arbitration of

some issues between them, any doubt concerning the scope of the arbitration clause is resolved in favor of arbitration as a matter of federal law." *Gore v. Alltel Commc'ns., LLC*, 666 F.3d 1027, 1032 (7th Cir. 2012). This whole suit is subject to arbitration under the Agreement's arbitration clause.

Defendants' submission that arbitration is impossible because Shehzada Mufaddal is unwilling to serve again as arbitrator fails at this juncture the present record does not establish, one way or the other, whether he is willing to arbitrate. The parties have submitted conflicting evidence as to his inclinations, but it is all inadmissible hearsay; in any event the communications themselves do not definitely reveal whether he is willing or unwilling to arbitrate. Doc. 15-6 at 2; Doc. 20-1 at 3-4. The factual predicate underlying Defendants' impossibility argument is therefore absent. *See Jackson v. Payday Loan Store of Ill., Inc.*, 2010 WL 1031590, at *4 (N.D. Ill. Mar. 17, 2010) ("Because there is no certainty that either the AAA or JAMS will refuse to arbitrate this dispute, performance of the Agreement has not been rendered impossible as a matter of law.").

The first step in resolving this issue is to stay the case and inquire of Shehzada Mufaddal whether he is willing to serve. The court directs the parties to jointly inquire of Shehzada Mufaddal whether he is willing to serve as arbitrator and, if so, when he would be available to conduct the arbitration. That inquiry should be made by February 8, 2013. And the court respectfully requests of Shehzada Mufaddal that he respond to the inquiry. If Shehzada Mufaddal agrees to arbitrate, the case will remain stayed pending arbitration. If he declines or if he does not definitively respond within a reasonable period of time, the court will determine, with the parties' assistance, how best to proceed.

**Conclusion**

Pursuant to Plaintiffs' stipulation, Yunus is dismissed as a party defendant to Count II of the complaint. Defendants' Rule 12(b)(7) motion to dismiss is denied, and their motion for a stay pending arbitration under § 3 of the FAA is granted. The Rule 12(b)(6) motion is denied without prejudice to reinstatement if arbitration is shown to be impossible.

January 29, 2013                                      _____
                                                               United States District Judge